## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| COOSA RIVER BASIN INITIATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT FOR** |
| | ) | **DECLARATORY AND** |
| v. | ) | **INJUNCTIVE RELIEF** |
| | ) | |
| MOUNT VERNON MILLS, INC, and | ) | |
| TOWN OF TRION, GEORGIA | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Coosa River Basin Initiative ("CRBI") files this Complaint

against Defendants Mount Vernon Mills, Inc. ("Mount Vernon" or the "Mill")

and Town of Trion, Georgia ("Trion") as follows:

## STATEMENT OF THE CASE

1.      This is a citizen suit under the Clean Water Act ("CWA") § 505, 33

U.S.C. § 1365(a)(1), to address discharges of per- and polyfluoroalkyl substances

("PFAS") from Mount Vernon Mills into the Trion, Georgia Water Pollution

Control Plant ("WPCP"), and from Trion's WPCP to the Chattooga River.

2.      Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) prohibits

discharges of pollutants by any person into waters of the United States except as

authorized by a National Pollutant Discharge Elimination System (NPDES) permit. Trion is in violation of the CWA, 33 U.S.C. § 1311(a), because it is discharging PFAS from the WPCP into the Chattooga River without a NPDES permit.

3.      The Clean Water Act's national pretreatment standards and implementing regulations govern wastewater discharges from industrial facilities, such as Mount Vernon Mills, to municipally owned treatment plants, such as Trion's WPCP. Mount Vernon is in violation of the Act's national pretreatment standards, including the prohibitions on Pass Through and Interference, 33 U.S.C. §§ 1317(b) and (d), 40 C.F.R. § 403.5(a)(1). Mount Vernon discharges PFAS pollution into Trion's treatment plant from the Mill. Because the treatment plant cannot remove PFAS, Mount Vernon's PFAS pass through the WPCP untreated into the Chattooga River. As a result, the Mills' PFAS discharges cause direct PFAS discharges from the WPCP to the Chattooga River. These discharges interfere with Trion's treatment processes and sludge operations, and therefore the Mills' PFAS discharges constitute Pass Through and Interference in violation of the Clean Water Act.

4.      This action seeks declaratory relief, injunctive relief, civil penalties

and costs of litigation, including reasonable attorney and expert fees and expenses.

## **JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over the Clean Water Act claims set forth in this Complaint against Defendants Trion and Mount Vernon Mills pursuant to Section 505(a) of the CWA, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331.

6.      CRBI has complied with the pre-suit notice provisions of the Clean Water Act. Pursuant to Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), CRBI, on April 8, 2022, tendered notices of intent to file suit under the CWA via certified mail to each of Defendants Mount Vernon Mills and Trion, the Administrator of the U.S. Environmental Protection Agency, the Regional Administrator of the EPA, the Georgia Department of Natural Resources' Environmental Protection Division, and the United States Attorney General. (hereinafter "Notices," attached hereto as Exhibit 1 (Notice to Trion, Georgia with documentation of its receipt) and Exhibit 2 (Notice to Mount Vernon Mills with documentation of its receipt), each incorporated by reference herein). These Notices complied with 33 U.S.C. § 1365(b)(1)(A) and with 40 C.F.R. Part 135,

Subpart A. More than sixty (60) days have passed since the Notices were served on Defendants Mount Vernon Mills and Trion, and these agencies.

7.     Neither EPA nor EPD has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or State to redress the violations of the Clean Water Act by Defendants Mount Vernon and Trion. In addition, neither EPA nor EPD has commenced an administrative civil penalty action under Section 309(g)(6) of the Clean Water Act, 33 U.S.C. § 1319(g)(6), or under a comparable Georgia law, to redress the violations of the CWA by these Defendants. Any administrative action to address these violations taken by EPD would not preempt this CWA lawsuit because Georgia's water pollution enforcement scheme is not comparable to the enforcement provisions of the CWA.

8.     CRBI will, immediately upon receipt of a file-stamped copy of this Complaint, mail a copy to the Administrator of the EPA, the Regional Administrator of the EPA, and the Attorney General of the United States.

9.     Venue is proper in the Northern District of Georgia, because the source of the violations alleged herein are located within the Northern District of Georgia. 33 U.S.C. § 1365(c)(1); 28 U.S.C. § 1391(b) and (c).

## PARTIES

10.     Plaintiff is a "citizen" within the meaning of 33 U.S.C. §§ 1365(a) and 1365(g).

11.     Plaintiff Coosa River Basin Initiative is a non-profit corporation organized under the State of Georgia that seeks to protect, preserve, and restore one of North America's most biologically diverse river systems, the Coosa River Basin, including the Chattooga River. Coosa River Basin Initiative achieves these purposes and objectives through education, advocacy, monitoring, public engagement, social events, sampling, pollution prevention measures, and seeking redress in the courts where reasonably necessary.

12.     Coosa River Basin Initiative is a member organization with more than 500 members, including individuals, families, and businesses – many of whom live and work, swim, fish, boat, recreate, and engage in social events in, near, and on the Chattooga River and connected waters, including Weiss Lake downstream from Trion's and Mount Vernon Mills' PFAS pollutant discharges.

13.     The violations alleged herein have lessened members' recreational and aesthetic enjoyment of the Chattooga River and connected creeks, rivers, lakes, and other waterbodies, such as tributaries to the Chattooga River, and Weiss

Lake. They would use and enjoy these waters more if the violations alleged herein ceased.

14.     These injuries will not be redressed except by an order from this Court requiring Trion and Mount Vernon to take immediate action to halt their ongoing PFAS pollution into the Coosa River Basin. Thus, enforcement by this Court as to CRBI's claims asserted and relief sought in this Complaint, including injunctive relief to cease and remedy the violations, and the imposition of civil penalties, would remedy the injuries suffered by CRBI and CRBI's members.

15.     The interests CRBI seeks to protect are germane to its purposes and objectives, but neither the claims asserted herein, nor any of the relief requested, require the participation of individual members in this lawsuit. Accordingly, CRBI has standing to prosecute this action.

16.     Defendant Mount Vernon Mills, Inc. is a foreign corporation with its headquarters in South Carolina which owns and operates a textile mill in Trion, Georgia.

17.     Defendant Town of Trion is a municipal corporation organized under the laws of the State of Georgia which owns and operates the Trion WPCP.

18.    Defendants Mount Vernon Mills and Trion are "person[s]" within the meaning of 33 U.S.C. §§ 1362(5) and 1365(a)(1).

## FACTUAL ALLEGATIONS

**The Mill's PFAS discharges to the Trion WPCP**

19.    For at least three decades, Mount Vernon Mills, Inc. has owned and operated a large textile mill in Trion, Georgia, producing, dying, and finishing broad-woven fabrics made of cotton, and polyester/cotton or cotton/nylon blends.

20.    In the course of its operations, the Mill has used products containing various PFAS in its textile production and handling process to make its fabrics stain- and water-resistant.

21.    The Mill discharges about 3,230,000 gallons per day of industrial process wastewater and 220,000 gallons per day of non-process wastewater to the Trion WPCP. Approximately ninety-four percent of the Trion WPCP's wastewater volume is industrial wastewater from Mount Vernon Mills.

22.    The Mill discharges PFAS to Trion's treatment plant. These PFAS discharges are continuing as of the date of this Complaint and will continue.

**Trion's PFAS discharges to the Chattooga River**

23.     Trion's WPCP discharges a maximum of 5 million gallons of wastewater per day through Outfall 001 to the Chattooga River.

24.     Trion's WPCP is designed to treat domestic waste. The WPCP's treatment process is incapable of removing or destroying the PFAS received from Mount Vernon Mills in the Mill's wastewater. As a result, PFAS from the Mill pass through Outfall 001 of Trion's plant and discharge into the Chattooga River.

25.     Trion's PFAS discharges to the Chattooga River from the WPCP occurred at least since April 25, 2018 and such discharges are continuing.

**Trion's NPDES Permit**

26.     The Town of Trion operates the Trion WPCP pursuant to NPDES Permit No. GA 0025607 issued by Georgia EPD. The most recent NPDES Permit was effective on March 1, 2019. EPD issued this permit based on Trion's 2018 NPDES Permit Application.

27.     Trion did not disclose the discharge of any PFAS in its 2018 NPDES Permit Application submitted to EPD. Georgia EPD did not reasonably contemplate that Trion would discharge any PFAS from Outfall 001 into the

Chattooga River. Accordingly, Trion's 2019 NPDES Permit does not authorize Trion to discharge any PFAS to the Chattooga River.

**Mobility, Persistence, and Toxicity of PFAS**

28.     PFAS refer to a class of thousands of artificial chemicals that have been used in manufacturing since at least the 1940s that are known to be dangerous to human health and the environment. Due to their strong carbon-fluorine bonds, PFAS are highly stable and are resistant to heat and chemical reactions. PFAS repel both oil and water. As a result of these properties, PFAS have a variety of industrial and commercial applications, and are often used in textile production to confer resistance to stain, soil, waters and/or oil, among other properties.

29.     PFAS are highly mobile and can bioaccumulate in organisms.

30.     Human exposure to two of the most often-studied PFAS, perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS), have been found to cause numerous adverse health impacts.

31.     In 2009, EPA established provisional health advisory levels for PFOA and PFOS in drinking water at 400 parts per trillion (ppt) and 200 ppt, respectively. In 2016, EPA established a lifetime health advisory of 70 ppt for the combined concentrations of PFOA and PFOS in drinking water. In June 2022, EPA, based on

updated toxicity assessments for PFOA and PFOS, replaced its prior lifetime health advisories in drinking water for these chemicals. EPA's 2022 interim updated health advisory concentration for drinking water is 0.004 ppt for PFOA and 0.02 ppt for PFOS.

32.     The scientific literature indicates that numerous human health risks are likewise associated with exposure to PFAS compounds in addition to PFOA and PFOS.  Exposure to a threshold concentration of perfluorobutanoic acid (PFBA) can induce increased thyroid and liver weight and cellular changes in both organs, changes in thyroid hormones, decreased cholesterol, and delayed development and decreased red blood cells and hemoglobin. Scientific literature suggests that exposure to a threshold amount of perfluorobutane sulfonic acid (PFBS) can result in effects on the thyroid, reproductive organs and tissues, the developing fetus, and the kidneys. Adverse human health effects are associated with exposure to numerous other PFAS compounds.

33.     PFAS discharged into rivers and streams also threaten the aquatic ecosystem, where PFAS can exist throughout the water column and in river sediments, where they where they can expose fish and benthic organisms.

## COUNT I:

### Discharges to Waters of the United States without a NPDES Permit in violation of the Clean Water Act (33 U.S.C. § 1311)
### (Town of Trion)

34.   Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs 1 to 33 as though fully set forth herein.

35.   Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from a point source to Waters of the United States except in compliance with various enumerated sections of the Clean Water Act. Among other things, Section 301(a) of the Clean Water Act prohibits discharges not authorized by, or in violation of the terms of, a NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342. Each discharge of a pollutant that is not authorized by a NPDES permit or is in violation of a NPDES permit constitutes a separate violation of the Clean Water Act. 33 U.S.C. § 1319(d).

36.   The State of Georgia has been delegated authority to implement the permitting programs of the Clean Water Act by EPA, including the NPDES permit program, pursuant to 33 U.S.C. § 1342(b).

37.     A citizen suit, pursuant to 33 U.S.C. § 1365(a)(1), may be brought for the discharge of pollutants into waters of the United States without a permit or in violation of a permit in violation of Section 301 of the Clean Water Act. 33 U.S.C. § 1365(f).

38.     Wastewater has been, and continues to be, discharged from the Trion WPCP to the Chattooga River via Outfall 001 located at approximately Latitude 34.540108º, Longitude -85.301319º.

39.     Mount Vernon Mills discharges PFAS to the Trion WPCP, which are in turn discharged by Trion from its treatment plant to the Chattooga River. The Town of Trion, therefore, has discharged and continues to discharge PFAS via Outfall 001 of the WPCP to the Chattooga River.

40.     PFAS are pollutants under the Clean Water Act. 33 U.S.C. § 1362(6).

41.     The Trion WPCP's Outfall 001 is a "point source" under the Clean Water Act. 33 U.S.C. § 1362(14).

42.     The Chattooga River is a water of the United States.

43.     NPDES Permit No. GA0025607 does not authorize Trion to discharge PFAS from Outfall 001 to the Chattooga River. The Town of Trion, therefore, has

discharged and continues to discharge PFAS from Outfall 001 of its WPCP

without an NPDES permit authorizing such discharges.

44.     Each of Trion's PFAS discharges from Outfall 001 into the Chattooga

River without authorization under a NPDES permit is a separate violation of the

Clean Water Act. 33 U.S.C. §§ 1311, 1319(d), 1342.

45.     Trion's unpermitted PFAS discharges likely commenced prior to

April 25, 2018. Surface water sample results collected by or at the direction of

EPA immediately downstream of the WPCP's discharge outfall to the Chattooga

River on that date reported combined PFOA and PFOS of 83 ppt.

46.     Commencing on or about February 5, 2020 to February 24, 2021,

sampling from Trion's Outfall 001 discharges reported numerous PFAS, including

but not limited to: PFOA, PFOS, PFBA, PFBS, PFPeA, PFPeS, PFHxA, PFHxS,

PFHpA, PFHpS, PFNA, PFNS, PFDA, PFUnDA, PFOSA, 8:2 FTS, 6:2 FTS, N-

MeFOSAA, and FBSA.[1]

---

[1] PFOA (Perfluorooctanoic acid); PFOS (Perfluorooctanesulfonate);
PFBA (Perfluorobutanoic acid); PFBS(Perfluorobutanesulfonate);
PFPeA (Perfluoropentanoic acid); PFPeS (Perfluoropentansulfonate);
PFHxA (Perfluorohexanoic acid); PFHxS (Perfluorohexanesulfonate);
PFHpA (Perfluoroheptanoic acid); PFHpS (Perfluoroheptanesulfonate);

47.    On information and belief, these unpermitted PFAS discharges from Outfall 001 are continuing.

48.    Trion's unpermitted discharges into the Chattooga River have harmed members of the Coosa River Basin Initiative by impairing their use and enjoyment of the waters downstream of the Trion WPCP, including the Chattooga River, its tributaries, Weiss Lake, and downstream waters.

49.    Trion's continuing unpermitted discharges alleged herein harm the waters of Georgia, waters of the United States, the Coosa River Basin Initiative, and its members, for which harm the Coosa River Basin Initiative has no plain, speedy, or adequate remedy at law.

50.    The Court should issue an enforcement order and injunction order to Defendant Town of Trion to cease its discharges of PFAS from the Trion WPCP to the Chattooga River.

---

PFNA (Perfluorononanoic acid); PFNS (Perfluorononanesulfonate); PFDA (Perfluorodecanoic acid); PFUnDA (Perfluoroundecanoic acid); PFOSA (Perfluorooctanesulfonamide); 8:2 FTS (8:2 Fluorotelomer sulfonate); 6:2 FTS (6:2 Fluorotelomer sulfonate); N-MeFOSAA (N-methylperfluoro-1-octanesulfonamidoacetic acid); and FBSA (Perfluoro-1-butanesulfonamide).

51.     The Court should assess civil penalties against Trion for its violations of Count I of this Complaint under Section 309(d) and 505 of the Clean Water Act, 33 U.S.C. §§ 1319(d) and 1365.

## COUNT II:

### Violations of national pretreatment standards prohibiting
### Pass Through and Interference
### (Mount Vernon Mills)

52.     Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs 1 to 51 as though fully set forth herein.

53.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from a point source to waters of the United States except in compliance with, among other conditions, effluent standards or pretreatment standards imposed by Section 307 of the Act, 33 U.S.C. § 1317(b). Pretreatment standards are enforceable in citizen suits. 33 U.S.C. §§ 1365(a), (f).

54.     The Clean Water Act's pretreatment standards prohibit Industrial Users from introducing any pollutants into a Publicly Owned Treatment Works (POTW) which cause Pass Through or Interference. 40 C.F.R. § 403.5(a)(1).

55.     Trion's WPCP is a POTW governed by the Clean Water Act's national pretreatment standards. 33 U.S.C. §§ 1317(b), (d).

56.     Defendant Mount Vernon Mills is an Industrial User discharging wastewater to the Trion WPCP. 33 U.S.C. § 1317(d); 40 C.F.R. §§ 403.3(i), (j).

57.     Mount Vernon Mills is in violation of federal and state pretreatment standards and effluent limitations by discharging PFAS to the Trion WPCP in a manner that causes Pass Through and Interference. 33 U.S.C. § 1317(b), (d); 40 C.F.R. § 403.5(a)(1); Ga. Comp. Rules and Regs. r. 391-3-6-.06(4)(a)3.

58.     "Pass Through" means:

a Discharge which exits the POTW into waters of the United States in quantities or concentrations which, alone or in conjunction with a discharge or discharges from other sources, is a cause of a violation of any requirement of the POTW's NPDES permit (including an increase in the magnitude or duration of the violation).

40 C.F.R. § 403.3(p).

59.     Mount Vernon discharges PFAS to the Trion WPCP, a POTW. The PFAS from Mount Vernon exit Trion's treatment plant into the Chattooga River, a water of the United States, in quantities or concentrations which are a cause of (prior and continuing) violations of Trion's NPDES Permit, Part I.A.5 (Effluent Toxicity and Biomonitoring Requirements) and Ga. Comp. Rules & Regs. 391-3-

6-.03(5)(e), and Part II.A.11 of Trion's NPDES Permit, (Notice concerning Endangering Waters of the State). Mount Vernon's PFAS discharges both increase the magnitude and the duration of Trion's NPDES permit violations, and are continuing in duration. As a result, the Mill's discharges to the Trion WPCP constitute illegal Pass Through discharges. 40 C.F.R. § 403.3(p).

60.    Mount Vernon Mills causes Pass Through by discharging PFAS to the Trion WPCP causing Trion's unpermitted discharges of PFAS in violation of the Clean Water Act, as detailed in Count I above.

61.    "Interference" with a POTW means:

a Discharge, which, alone or in conjunction with a discharge or discharges from other sources, both: …

Inhibits or disrupts the POTW, its treatment process or operations, or its sludge processes, use or disposal; and …

Therefore is a cause of a violation of any requirement of the POTW's NPDES permit (including an increase in the magnitude or duration of a violation) or the prevention of sewage sludge use or disposal in compliance with … the Resource Conservation and Recovery Act (RCRA), and including state regulations …

40 C.F.R. § 403.3(k).

17

62. Mount Vernon discharges PFAS to the Trion WPCP, a POTW. The PFAS from Mount Vernon has inhibited and disrupted the POTW, its treatment processes, and operation.

63. As set forth above, Mount Vernon's PFAS discharges also cause Trion to violate its own NPDES permit. Mount Vernon's PFAS discharges to the Trion WPCP both increase the magnitude and the duration of Trion's NPDES permit violations corresponding to each discharge of PFAS to the WPCP, which are continuing.

64. Mount Vernon's PFAS discharges therefore constitute unlawful Interference discharges. 40 C.F.R. § 403.3(k).

65. Mount Vernon's Pass Through and Interference discharges commenced at least as of April 25, 2018 and they are continuing as of the date of this Complaint.

66. Each day the Mill's discharge of PFAS to the Trion WPCP is a separate violation of the national pretreatment standards (40 C.F.R. § 403.5(a)(1)); state pretreatment standards (Ga. Comp. Rules and Regs. r. 391-3-6-.06(4)(a)3); and in turn the Clean Water Act. 33 U.S.C. § 1319(d).

67.    Mount Vernon Mills' Pass Through and Interference PFAS discharges to the Trion WPCP and from it as set forth herein harm the waters of Georgia, waters of the United States, the Coosa River Basin Initiative, and its members, for which harm the Coosa River Basin Initiative has no plain, speedy, or adequate remedy at law.

68.    Mount Vernon Mills should be subject to an enforcement order and injunction order to cease its discharges of PFAS to the Trion WPCP.

69.    Mount Vernon Mills should be subject to the assessment of civil penalties for its violations of Count II of this Complaint under Section 309(d) and 505 of the Clean Water Act, 33 U.S.C. §§ 1319(d) and 1365.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiff Coosa River Basin Initiative respectfully requests that this Court:

A.    Enter a declaratory judgment finding that Defendant Mount Vernon Mills has violated and is in violation of the Clean Water Act, 33 U.S.C. §§ 1311 and 1317.

B.     Enter an enforcement order and injunction under the Clean Water Act enjoining Defendant Mount Vernon Mills from continuing to violate the Clean Water Act, and causing it to cease discharge of PFAS into the Trion WPCP.

C.     Enter a declaratory judgment finding that Defendant Town of Trion has violated and is in violation of the Clean Water Act, 33 U.S.C. § 1311.

D.     Enter an enforcement order and injunction under the Clean Water Act enjoining Defendant Town of Trion from continuing to violate the Clean Water Act, and ordering Trion to cease discharge of wastewater containing PFAS into the Chattooga River from the Trion WPCP, including from Outfall 001 without a NPDES Permit.

E.     Order Defendants to pay civil penalties in an amount not to exceed $59,973 per day per violation for all violations of the Clean Water Act. 33 U.S.C. §§ 1319(d), 1365(a); 40 C.F.R. §§ 19.1 – 19.4.

F.     Award Coosa River Basin Initiative its reasonable fees, costs, and expenses, including attorneys' fees and expert fees, associated with this litigation; and

G.     Grant Coosa River Basin Initiative any such further and additional relief as the Court may deem just and proper.

Respectfully submitted this 8th day of May, 2023.

> **SOUTHERN ENVIRONMENTAL LAW CENTER**
>
> */s/ Christopher J. Bowers*
> Christopher J. Bowers
> GA Bar No. 071507
> R. Hutton Brown
> GA Bar No. 979890
> Ten 10th Street NW, Suite 1050
> Atlanta, GA 30309
> Telephone: (404) 521-9900
> Facsimile: (404) 521-9909
> cbowers@selcga.org
> hbrown@selcga.org
>
> *Attorneys for Plaintiff*
> *Coosa River Basin Initiative*

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D, the undersigned counsel certified that the foregoing filing is prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1.C.

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing **COMPLAINT FOR DECLARATY AND INJUNCTIVE RELIEF** has been filed electronically with the Clerk of Court by using the Court's CM/ECF system, which will serve notice of filing to all registered users.

This 8th day of May, 2023

*/s/ Christopher J. Bowers*
Christopher J. Bowers
