# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| COOSA RIVER BASIN INITIATIVE<br><br>Plaintiff<br><br>v.<br><br>MOUNT VERNON MILLS, INC. and TOWN OF TRION, GEORGIA<br><br>Defendants | Civil Action No.<br>4:23-cv-00088-WMR |

## CONSENT DECREE

## RECITALS

WHEREAS, Plaintiff Coosa River Basin Initiative (CRBI) is a 501(c)(3) grassroots nonprofit environmental organization based in Rome, Georgia with the mission to protect, preserve, and restore the upper Coosa River basin; and

WHEREAS Defendant Mount Vernon Mills, Inc. ("Mount Vernon") is a domestic corporation that is the owner and operator of a textile finishing facility in Trion, Georgia, which discharges industrial wastewater into the Town of Trion's Water Pollution Control Plant ("WPCP"); and

WHEREAS Defendant Town of Trion, Georgia ("Trion") is a municipality located in North Georgia that operates the WPCP that receives Mount Vernon's industrial wastewater discharge.

1

WHEREAS, CRBI alleges Mount Vernon and Trion have responsibility and/or liability arising from the occurrence of certain PFAS in the Coosa watershed under the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.* ("CWA") and the Resource Conservation and Recovery Act 42 U.S.C. §§ 6901 *et seq.* ("RCRA") as set forth in CRBI's April 8, 2022 and September 28, 2022 Notices of Intent to Sue issued to Mount Vernon and Trion, respectively; and

WHEREAS CRBI filed a Complaint naming Mount Vernon and Trion as Defendants in the United States District Court for the Northern District of Georgia, Case Number 4:23-cv-00088-WMR (the "Litigation"); and

WHEREAS, Mount Vernon and Trion dispute such responsibility and/or liability and admit no liability arising out of Plaintiff's allegations in the Notices of Intent to Sue or the Litigation; and

WHEREAS, Plaintiff, Mount Vernon, and Trion have engaged in settlement negotiations in an attempt to resolve Plaintiff's claims against Mount Vernon and Trion; and

WHEREAS, the Parties, in consultation with counsel, hereby agree to resolve the Litigation and any issues that arose or could have arisen in connection with the Litigation in accordance with this Consent Decree, believing that settling the issues

without further litigation through a Consent Decree is the most appropriate means of resolving the issues; and

WHEREAS, a copy of the proposed Consent Decree was received by the Attorney General of the United States and the EPA Administrator more than forty- five (45) days before entry of this Consent Decree as required by 33 U.S.C. § 1365(c)(3); and

WHEREAS, Plaintiff, Mount Vernon, and Trion recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation between the parties and that this Consent Decree is fair, reasonable, and in the public interest.

**NOW THEREFORE, WITHOUT THE TRIAL OR ADJUDICATION OF ANY ISSUE OF FACT OR LAW AND WITHOUT ADMISSION BY DEFENDANTS OF ANY VIOLATIONS OR WRONGDOING, AND UPON CONSENT AND AGREEMENT OF THE PARTIES, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

**I. JURISDICTION**

A.  This Court has subject matter jurisdiction over the Litigation pursuant to 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331.

B.  Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b), and 33 U.S.C. § 1365(c)(1).

C.  For purposes of entry of this Consent Decree and any action to enforce this Consent Decree, Mount Vernon and Trion consent to this Court's jurisdiction under 33 U.S.C. § 1365(a).

## II.  INJUNCTIVE RELIEF

A.  ***Elimination of PFAS***.  Mount Vernon will permanently eliminate its use of all per- and polyfluoroalkyl substances, further defined as fluorinated substances that contain at least one fully fluorinated methyl or methylene carbon atom including known precursors thereto ("PFAS") at its Trion Facility by or before December 31, 2023. Mount Vernon agrees to issue a letter to CRBI confirming their process changes to eliminate the use of PFAS at its Trion Facility.  This Paragraph II(A) will survive the termination or dissolution of this Consent Decree.

B.  ***Technical Solution***.  As of March 1, 2023, Mount Vernon has implemented the following Technical Solution:  Mount Vernon has isolated and containerized Mount Vernon's PFAS-containing industrial wastewater and Mount Vernon will arrange for the transportation of the containerized industrial wastewater for offsite treatment at a fully licensed hazardous waste incinerator.  Mount Vernon shall continue to operate the Technical Solution at Mount Vernon's sole cost and expense until the cessation of all PFAS as provided in Paragraph II(A), above.

C.  ***Ongoing Monitoring of Industrial Discharge***.  Beginning within two (2) months of implementing the Technical Solution, Mount Vernon and Trion will

conduct quarterly (once per every three months) sampling and analyze the samples for the PFAS listed in Exhibit A.

    i. Representative samples under this paragraph shall be collected on Mount Vernon's property prior to discharge of the industrial wastewater to the Trion WPCP ("Discharge Samples"). The location of the Discharge Sampling point is reflected on Exhibit B.

    ii. Sampling under this Section shall cease either (1) twelve (12) months following the cessation of all PFAS; (2) when the results of two consecutive quarterly sampling events are non-detect for all constituents analyzed; or 3) the Coosa River Basin Initiative consents to early termination, in Coosa River Basin Initiative's sole discretion, whichever occurs first.

    iii. Sampling conducted under this Section shall utilize the modified method *Perfluorinated Alkyl Substances by Isotope Dilution* (537.1 Method), or another method equivalent to 537.1 method with isotope dilution.

    iv. Mount Vernon will be responsible for the costs of sampling under this paragraph.

    v.    Mount Vernon and Trion will provide the results of this sampling to CRBI within fifteen (15) business days of receipt of the sampling results by Mount Vernon.

## II. ATTORNEY FEES/EXPERT FEES AND COSTS

The Parties have reached independent Settlement Agreements regarding attorney fees, litigation costs and expenses, and expert consultant costs in connection with this matter, among other terms.

## III. CIVIL PENALTIES

Within thirty (30) days of the entry of this Consent Decree by the Court, Mount Vernon and Trion agree to pay $5,000 in civil penalties to the US Treasury for any alleged violations of the CWA and RCRA.

## IV. RELEASE

For the consideration herein and other good and valuable consideration, CRBI hereby waives, releases, discharges, and covenants not to sue Mount Vernon and Trion for any claims arising out of, or may in any way grow out of the facts giving rise to CRBI's April 8, 2022 and September 28, 2022 Notices of Intent to Sue issued to Mount Vernon and Trion, respectively, or the Complaint (as attached hereto), including, without limitation, any and all known or unknown claims which have resulted and may result from the alleged act or omissions of either Mount Vernon or

Trion, including alleged violations of the Clean Water Act and/or the Resource Conservation and Recovery Act 42 U.S.C. §§ 6901 *et seq*. ("RCRA").

## V.  DISSOLUTION

Defendants can apply to the Court for dissolution of this Consent Decree after Defendants have completed all requirements and made all payments due under Paragraphs II and III. If not terminated earlier, after this Consent Decree has been in effect for seven (7) years, and Defendants have paid and expended all amounts required under the Consent Decree, the injunctive provisions in Paragraph I will terminate automatically.  Notwithstanding the forgoing, either party shall have the right to request termination of this Decree for good cause shown on or after (5) years from entry of this Decree by filing a Motion for Termination provided, however, upon termination of this Consent Decree automatically or upon such earlier date as provided in this Paragraph, the Provisions of Paragraph II(A) shall continue regardless of the termination and shall remain an enforceable requirement subject to the jurisdiction of the Court.

## VI.  OTHER TERMS

A.  ***Effective Date***. This Consent Decree shall become effective on the date it is entered by the Court following any required time period for notification and consideration by the United States ("Effective Date").

B.  ***Effect of Settlement.*** This Consent Decree resolves the civil claims of the Coosa River Basin Initiative as alleged in the Complaint through the Effective Date. This Consent Decree in no way affects or relieves Mount Vernon or Trion of their respective responsibilities to comply with Federal, State, and local laws, regulations and applicable permits.

C.  ***Administrative Review***. The Parties acknowledge and agree that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered or effective prior to forty-five (45) days following the receipt of this Consent Decree by the Attorney General and the EPA Administrator. Therefore, upon execution of this Consent Decree by the Parties, Plaintiff shall serve copies of the Consent Decree upon the EPA Administrator, Environmental Protection Agency, Washington, DC 20460, the U.S. Attorney General, Department of Justice, Citizen Suit Coordinator, Room 2615, Washington, DC 20530, and EPA Regional Administrator, EPA Region 4, Sam Nunn Atlanta Federal Center, 61 Forsyth Street SW, Atlanta, GA 30303-8960, in accordance with 40 C.F.R. § 135.5. The Parties shall also jointly lodge the Consent Decree with the Court upon execution. Upon expiration of the 45-day review period, so long as the reviewing authorities do not object to the entry of this Consent Decree, the Parties shall jointly move the Court for entry of the Consent Decree.

D. ***Effect of Entry or Lack of Entry***. In the event of entry of this Consent Decree, the Litigation will be dismissed with prejudice, and upon approval and entry this Consent Decree shall constitute a final judgment of the Court as to the Parties. If for any reason the reviewing authorities object to this Consent Decree and the Court refuses to approve and/or enter this Consent Decree in the form presented, the Parties shall retain all rights they had in this litigation before lodging of this Decree. In the event the Court refuses to approve and/or enter this Consent Decree in the form presented, or in the event the United States proposes modifications to this Decree, the Parties shall negotiate in good faith in an attempt to resolve such objection and/or refusal by the Court; however, the Parties reserve and shall retain all rights to object to any modification proposed by the United States, the Environmental Protection Division of the Georgia Department of Natural Resources, or any other person or entity, whether during the comment period or otherwise.

E. ***Continuing Jurisdiction***. The United States District Court for the Northern District of Georgia shall have continuing jurisdiction to interpret and enforce the terms and conditions of this Consent Decree to resolve disputes arising hereunder, and for such other and further actions as they may be necessary or appropriate in the construction or execution of the Consent Decree.

F. ***Entire Agreement***. The Parties have reached independent confidential Settlement Agreements related to the payment of attorney's fees, expenses of

litigation, and other particulars. This Consent Decree, along with the independent Settlement Agreements reached between and among the Parties, constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements and understandings, whether oral or written, among the Parties or their representatives.

G. **_Modification_**. This Consent Decree may be modified only by an Order issued from the Court, made upon the written consent of the Parties.

H. **_Authorization_**. Each Party represents and warrants that the person signing this Consent Decree on behalf of such Party has been duly authorized to enter into this Consent Decree on the Party's behalf.

I. **_Successors and Assigns_**. This Consent Decree shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

J. **_Notices_**. The Parties shall provide one another with seven (7) days written notice and opportunity to cure any alleged breach of this Consent Decree before commencing an enforcement action. Such notice shall be given to all counsel of record, as reflected on the Court's docket report, and may be given via email, facsimile, first class mail or nationally-recognized courier service.

K. **_Counterparts_**. This Consent Decree may be signed in counterparts. Facsimile, electronic and scanned signatures or copies of this Consent Decree shall be effective as originals for all purposes.

ENTERED this 10th day of July, 2023.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

Scope of Sampling

- Perfluorooctanoic acid (PFOA)
- Perfluorooctanesulfonic acid (PFOS)
- Perfluorobutane sulfonic acid (PFBS)
- Perfluorohexanoic acid (PFHxA)
- Perfluoropentanoic Acid (PFPeA)
- Perfluorobutanoic acid (PFBA)
- Perfluoropentane sulfonic acid (PFPeS)
- Perfluoroheptanoic acid (PFHpA)
- Perfluoroheptane sulfonic acid (PFHpS)
- Perfluorononanoic acid (PFNA)
- Perfluorodecanoic acid (PFDA)
- Perfluoroundecanoic acid (PFUnDA)
- Perfluorododecanoic acid (PFDOA)
- Perfluorotridecanoic acid (PFTrDA)
- Perfluorotetradecanoic acid (PFTA)
- Hexafluoropropyleneoxide dimer acid (HFPO-DA) (Gen-X)
- 4,8-Dioxa-3H-Perfluorononanoic acid (ADONA)
- 11-Chloroeicosafluoro-3-oxaundecane-1-sulfonic acid (11-Cl-PF3OUdS)
- 9-Chlorohexadecafluoro-3-oxanonane-1-sulfonic acid (9-Cl-PF3ONS)

Case 4:23-cv-00888-MRR   Document 71   Filed 07/10/23   Page 12 of 13

# EXHIBIT B

